NO. 12-04-0108-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
ROBERT LEE CORNELIUS,                           §                 APPEAL FROM THE 173RD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 HENDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Robert Lee Cornelius was charged with possession of methamphetamine in the
amount of more than one gram but less than four grams with the intent to deliver. After a hearing,
the trial court denied his motion to suppress the evidence. The case was tried before a jury. After
finding Appellant guilty, the jury sentenced him to twenty years of imprisonment and a ten thousand
dollar fine. We affirm.
 
Background
            On January 30, 2004, Damon Boswell, a narcotics investigator with the Henderson County
Narcotics Enforcement Unit, sought a search warrant for Appellant’s residence. Boswell’s affidavit 
stated that it was based on information obtained from a confidential informant. According to the
affidavit, the informant had previously provided information to Boswell regarding narcotic activity
in Henderson County, and the previous information had always proven true and correct. The
confidential informant advised Boswell that he had personally observed Appellant in possession of
methamphetamine in Appellant’s residence within the past twenty-four hours. Further, Boswell had
received other information from confidential informants that Appellant had been trafficking illegal
narcotics from his residence. Boswell was personally familiar with Appellant’s involvement with
illegal drug activity because he had served another search warrant on October 15, 2003 at
Appellant’s residence. On that date, Boswell found methamphetamine inside the residence in
Appellant’s shirt pocket. Boswell testified that the investigating officers serving that October 15,
2003 warrant found chemicals and a propane tank containing traces of anhydrous ammonia, items
commonly used to manufacture methamphetamine, in and near the metal shop building beside the
residence. 
            Henderson County law enforcement served a search warrant at Appellant’s residence on
January 30, 2004. Eleven people known to the officers as drug users and dealers were present at
the residence when the officers arrived. Appellant and a woman were found in the bathroom of the
residence. The bathroom then became the focus of the search. Initially, the officers were unable to
find any contraband. Then they found Appellant’s wallet containing over four hundred dollars in
the linen closet in the bathroom. The wallet also contained a package that officers believed
contained drugs. One officer announced that suspicion to the other officers guarding the people
found at the scene. An officer testified that, when Appellant heard that announcement, he mouthed
the words to a man beside him, “Oh, [expletive omitted], they found the dope.” The officers
interpreted that comment as confirmation that they were searching in the right room and redoubled
their efforts to find the drugs in the bathroom. They looked under the footed bathtub with a
flashlight and found forty dollars, three baggies of methamphetamine, and a set of scales for
weighing drugs. The items were neither damp nor covered with dust, which indicated to the police
that the items had not been under the tub for very long, but, rather, had just been hidden. In the linen
closet, near where they found Appellant’s wallet, they then found a set of triple-beam scales. The
scales had traces of narcotics on them, suggesting they had been used to weigh drugs. Other baggies
containing drugs were found in the room that Jason Gregg rented from Appellant. Numerous
firearms were also found in the house. Appellant, the woman found in the bathroom with him, and
Gregg were arrested for possession of methamphetamine.
            At trial, Gregg testified that all the drugs were his and that he had tossed the drugs under the
tub before the police arrived. Appellant testified that none of the drugs were his. 
            On cross-examination, Appellant admitted that he had previously been arrested for
possession of methamphetamine on October 15, 2002 after law enforcement conducted a raid on
his home pursuant to a search warrant and had found methamphetamine in his pocket. He did not
remember several items listed in the warrant return, including another set of scales, a yellow straw
with drug residue, and some marijuana. He remembered a sawed-off shotgun, but did not recall if
it was illegal length. He admitted having video surveillance equipment and police scanners. 
            On cross-examination, Appellant also admitted he had been arrested again on October 15,
2003, when law enforcement raided his house pursuant to a search warrant and found
methamphetamine in his pocket and marijuana in his room. Appellant admitted that at that time he
also had lithium batteries and “three bundles of Sudafed pills,” which he agreed were both
ingredients used to make or “cook” methamphetamine. He also admitted having night vision
goggles, brass knuckles, more than seventeen guns, including at least ten .22-caliber guns and four
shotguns, and numerous gold coins and jewelry, including dozens of watches. He further admitted
using drugs with his daughter. He did not admit that he had another set of scales on that occasion. 
He disagreed that the propane tank outside his home had once contained anhydrous ammonia and
that a pan in the shed contained a residual substance from methamphetamine production.
            Appellant admitted being at the scene when his daughter’s car was repossessed, but denied
shooting at the repossessing truck driver with a shotgun. He was arrested on December 10, 2002 for
the aggravated assault and later indicted for the offense. The trial in that case was pending at the
time of Appellant’s trial on the charge that is the subject of this appeal.
            After Appellant had testified, the State put on rebuttal testimony. The Department of Public
Safety chemist testified about testing the drugs seized on January 30, 2004 and determining the drugs
to be 2.98 grams of methamphetamine. The truck driver identified Appellant and testified that
Appellant shot his vehicle and the towed car while he was repossessing the car.
            Two Henderson County Sheriff’s Department deputies testified about serving the October 15,
2002 search warrant and finding between six and seven grams of methamphetamine in Appellant’s
pockets. According to their testimony, they also found digital scales and a handgun under the bed
on which he was lying, marijuana, a shotgun of illegal length, police scanners and surveillance
equipment, which were identified as being commonly found in drug dealers’ homes. The officers 
also seized Sudafed tablets, lithium batteries, and a propane tank, all of which were commonly used
in methamphetamine production.
            The jury found Appellant guilty of possession of a controlled substance with intent to deliver. 
The jury also assessed Appellant’s punishment at twenty years of imprisonment and a ten thousand
dollar fine.
 
Sufficiency of the Evidence
            In his first issue, Appellant contends that the evidence was both legally and factually
insufficient to support his conviction.
Standard of Review
            Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1, 
6 (Tex. App.–San Antonio 1999, pet. ref’d). The standard for reviewing a legal sufficiency challenge
is whether any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to
the jury’s verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. 
A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing
court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).
            The sufficiency of the evidence is measured against the offense as defined by the
hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would include one that “accurately sets out the law, is authorized by the indictment,
does not unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s
theories of liability, and adequately describes the particular offense for which the defendant is tried.” 
Id. 
            The sole question considered by the appellate court in a factual sufficiency review is whether,
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond
a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). The court of
criminal appeals has explained that there are two ways in which the evidence may be factually
insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt. Id. Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict. In the second scenario, weighing all the
evidence in this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. Id. at
484-85. This standard acknowledges that evidence of guilt can preponderate in favor of conviction
but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another
way, evidence supporting guilt can outweigh the contrary proof and still be factually insufficient
under a beyond-a-reasonable-doubt standard. Id. at 485. 
            Because the jury is the sole judge of the facts, we must give deference to jury findings. Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight to give contradictory
testimonial evidence is within the sole province of the jury because it turns on an evaluation of
credibility and demeanor. Id. at 408-09. We may not substitute our judgment for that of the
factfinder. Zuniga, 144 S.W.3d at 482. The jury may choose to believe some testimony and
disbelieve other testimony. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).
Applicable Law
            Appellant was indicted for possession of a controlled substance with intent to deliver. See
Tex. Health & Safety Code Ann. § 481.112(a) (Vernon 2003). Under section 481.112(a), a
person commits an offense if he knowingly manufactures, delivers, or possesses with intent to
deliver methamphetamine. Id., §§ 481.112(a), 481.102(6) (Vernon Supp. 2004-05). Possession is
defined as “actual care, custody, control, or management.” Id. § 481.002(38)(Vernon Supp. 2004-05). Where a defendant is not in sole possession of the controlled substance, the State must also
prove additional factors referred to as “affirmative links.” Affirmative links are “those secondary
facts that indicate the accused’s knowledge and control of the contraband.” Martinets v. State, 884
S.W.2d 185, 188 (Tex. App.–Austin 1994, no pet.) The number of affirmative links present is less
important than the logical force of those factors, alone or in combination, in establishing the
elements of the offense. Id. Among the affirmative links relevant to this case are whether (1) the
contraband was conveniently accessible to Appellant; (2) Appellant was the owner of the house
where the contraband was found; (3) Appellant had a special connection to the contraband; (4) the
place the contraband was found was enclosed; (3) Appellant’s conduct indicated consciousness of
guilt; and (4) affirmative statements linked Appellant to the controlled substance. See Gilbert v.
State, 874 S.W.2d 290, 298 (Tex. App.–Houston [1st Dist.] 1994, pet. ref’d) (citations omitted).
Legal Sufficiency 
            Appellant contends that the evidence is legally insufficient to support his conviction because
the State’s proof established nothing more than Appellant’s presence at the scene of the offense and
created only a suspicion that he participated in the offense charged. He also asserts that the trial
court erred in denying his motion for a directed verdict.


 We disagree.
            In this case, the methamphetamine was reasonably accessible to Appellant. Appellant was
in the bathroom, an enclosed area, near the bathtub behind which the baggies containing the
methamphetamine had been tossed. Appellant also had a number of other special connections to the
contraband. Appellant owned the house in which the methamphetamine was found. Appellant
admitted possessing and using methamphetamine. Appellant’s wallet containing a large amount of
cash was found hidden in the bathroom closet with a set of scales identified by police as commonly
used by drug dealers. Further, an officer testified that he read Appellant’s lips when Appellant
thought the police had found the drugs in the bathroom, and that Appellant said to the man beside
him, “Oh, [expletive omitted], they found the dope.” This statement indicates a consciousness of
guilt. 
            In addition to their testimony about the seizure of drugs at Appellant’s home, they also
testified about other items they found, including scales, various drug paraphernalia, numerous guns,
a large amount of jewelry and coins, including over twenty watches, surveillance equipment and
police scanners, and other items that the officers identified as being consistent with a place where
drugs were delivered. They also found numerous Sudafed tablets and lithium batteries, a propane
tank with a discolored valve indicating misuse for storage of anhydrous ammonia, all indications of
methamphetamine production. The officers also testified about finding drugs and other drug
paraphernalia, as well as numerous other items indicating drug trafficking, after serving another
search warrant a year earlier. Appellant made several admissions regarding prior possession and use
of drugs.
            Reviewing the evidence most favorable to the jury’s verdict, we hold that a rational trier of
fact could have found beyond a reasonable doubt the essential elements of possession of
methamphetamine with intent to deliver. Therefore, the evidence is legally sufficient to support
Appellant’s conviction. Appellant’s first issue, as to legal sufficiency, is overruled.
Factual Sufficiency
            In addition to the evidence that supports the jury’s finding of guilt, we also consider the
contrary evidence, which includes the testimony of Jason Gregg who testified the drugs were his. 
We also consider Appellant’s testimony that he sold scrap metal, which was his explanation for the
large amount of cash and the propane tank the officers found at his home. The propane tank had a
bluish-colored valve, which, according to the testimony, was a sign of misuse to store anhydrous
ammonia. 
            In making our determination of the weight of the evidence, both for and against the verdict, 
we cannot say that the evidence supporting the verdict is too weak to support the finding of guilt
beyond a reasonable doubt or that the contrary evidence is so strong that the beyond-a-reasonable-doubt standard could not have been met. The jury heard both the State’s evidence and witnesses and
Appellant’s testimony and his witnesses. The jury saw the demeanor of the witnesses and evaluated
those witnesses’ credibility. The jury chose to believe the State’s evidence. Further, it was within
the jury’s province to evaluate Appellant and his witness, and they could accept or reject such
favorable evidence for the Appellant as they thought appropriate. Therefore, the evidence is legally
sufficient to support the jury finding that Appellant committed the offense of possession of
methamphetamine with the intent to deliver. Appellant’s first issue, as to factual legal sufficiency,
is overruled.
 
Sufficiency of the Search Warrant Affidavit
            In his second issue, Appellant contends the affidavit in support of the search warrant was
legally insufficient to support the issuance of the warrant. Specifically, Appellant contends that the
insufficiency of the affidavit was the “failure to adequately establish the reliability or credibility of
an unnamed informer.” Therefore, Appellant concludes, the trial court erred in denying his motion
to suppress evidence. 
Standard of Review
            We review a trial court’s application of the law concerning a motion to suppress and 
probable cause de novo, while affording almost total deference to the trial court’s determination of
the historical facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Reynolds v. State,
962 S.W.2d 307, 309 (Tex. App.–Houston [14th Dist.] 1998, pet. ref’d) (citing Guzman, 955 S.W.2d
at 87-89). We give the same deference to the trial court’s rulings on application of law to fact
questions, if the resolution of those ultimate questions turns on an evaluation of credibility and
demeanor. Guzman, 955 S.W.2d at 89. “The appellate courts may review de novo ‘mixed questions
of law and fact’ not falling within this category.” Id. When, as here, the trial court does not make
explicit findings of historical fact, we view the facts adduced at the suppression hearing in the light
most favorable to the trial court’s ruling. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim.
App. 2000). 
            In accordance with these principles, de novo review is appropriate when an appellate court
is presented with a question of law based on uncontroverted testimony and there is no indication that
the trial court did not believe that testimony. State v. Ross, 32 S.W.3d 853, 857-58 (Tex. Crim. App.
2000).
Applicable Law
            The constitutionally mandated requirements of an affidavit in support of a search warrant are
that the affidavit must state sufficient facts from which a magistrate could determine that probable
cause existed to support the warrant and must include an “affirmative allegation that the affiant
spoke with personal knowledge of the matters contained therein.” Aguilar v. Texas, 378 U.S. 108,
113-14, 84 S. Ct. 1508, 1513-14, 12 L. Ed. 2d 723 (1964). A magistrate or court examines the
“totality of the circumstances” to determine whether the facts alleged in an affidavit are sufficient
to support the issuance of a search warrant. Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317,
2332, 76 L. Ed. 2d 527 (1983). A reviewing court may consider only the facts contained within the
four corners of the affidavit to determine the sufficiency of the warrant’s affidavit. Jones v. State,
833 S.W.2d 118, 123 (Tex. Crim. App. 1992). The reviewing court may draw reasonable inferences
from the facts alleged and is to interpret the affidavit in a common sense and realistic manner. 
Lagrone v. State, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987).
            Where the information comes from an unnamed informant, the affidavit must also contain
an affirmative allegation that the affiant’s unidentified source spoke with personal knowledge. 
Aguilar, 378 U.S. at 114, 84 S. Ct. at 1513. Where an unnamed informant is the source of the
information, his credibility is established simply by allegations to the effect that the informer has
proven reliable on prior occasions. Gonzalez v. Beto, 425 F.2d 963, 968 (5th Cir. 1970). This is
accomplished by the affiant swearing that the informant has “given information in the past which
has proven to be true and correct in every instance” or similar wording that establishes the reliability
of the unnamed informant, based on the reliability of information previously provided by that
individual. Avery v. State, 545 S.W.2d 803, 804 (Tex. Crim. App. 1977) (citing Curtis v. State, 519
S.W.2d 883, 886 (Tex. Crim. App. 1975)); see also Elliott v. State, 687 S.W.2d 359, 362 (Tex.
Crim. App. 1985); Morgan v. State, 516 S.W.2d 188, 190 (Tex. Crim. App. 1974); Powell v. State,
505 S.W.2d 585, 586 (Tex. Crim. App. 1974).
Analysis
            The suppression hearing focused on the search warrant. Only Officer Boswell testified, and
the search warrant was introduced into evidence. The affidavit stated that the informant had told
Boswell about drugs the informant had seen in Appellant’s house within the previous twenty-four
hours. The affidavit further stated that the “[c]onfidential informant has provided Affiant with
information regarding narcotic trafficking in Henderson County in the past, each of which has been
proven to be true and correct.” Officer Boswell was subjected to strong cross-examination, but was
consistent. We have reviewed the affidavit and conclude that it establishes the confidential
informant’s prior reliability in terms previously found constitutionally sufficient. The affidavit was,
therefore, sufficient to meet the constitutional requirements as stated in Aguilar. Accordingly,
Appellant’s second issue is overruled.
 
Admission of Testimony of Gregg and Rebuttal
            In an argument that we will consider his third issue, Appellant initially complains that he was
entitled to present evidence that Gregg, a co-defendant, was the guilty party. Later in his argument,
however, he urges that the “trial court’s action in directing the prosecution to present evidence 
against Appellant resulted in harm to Appellant.” This is apparently a reference to the introduction
of extraneous offense evidence.
            We begin by noting that Appellant’s brief does not contain citations to the record showing
where the alleged errors occurred, nor does Appellant’s brief contain citations to any authority
supporting his argument. As such, Appellant’s “third issue” waived. See Tex. R. App. P. 38.1(h). 
However, we note that Gregg was permitted to testify, during which he admitted the drugs found
in the bathroom were his. As a result of Gregg’s testimony, the trial court permitted the State to
adduce rebuttal evidence. The jury heard Gregg’s testimony and either chose to disbelieve Gregg
or decided the drugs were in both Gregg’s and Appellant’s possession. The determination of the
credibility of the witnesses is the province of the jury, Barnes v. State, 876 S.W.2d 316, 321 (Tex.
Crim. App. 1994), and we will not disturb that determination on the record and the arguments before
us. Appellant’s “third issue” is overruled.
 
Disposition
            Having overruled Appellant’s issues, the judgment of the trial court is affirmed.     
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered August 31, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.





(DO NOT PUBLISH)